United States District Court
Southern District of Texas
**ENTERED**
April 11, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD KEELER, | § | |
| *Plaintiff,* | § § § | |
| v. | § | CIVIL ACTION H-15-2795 |
| BRENNTAG SPECIALTIES, INC., | § § § | |
| *Defendant.* | § § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss plaintiff Richard Keeler's claim under 42 U.S.C. § 1981 filed by defendant Brenntag Specialities, Inc. ("Brenntag"). Dkt. 6. After considering the complaint, motion, response, reply, and applicable law, the court is of the opinion that Brenntag's motion should be DENIED.

### I. BACKGROUND

Keeler contends that he was employed as an account manager by Brenntag from January 6, 2014 through May 5, 2014. Dkt. 1. Keeler was born in Puerto Rico and allegedly speaks "with a noticeable accent." *Id.* Keeler asserts that he became concerned with his job security at Brenntag when he met with a Regional Sales Manager who allegedly complained that a former Brenntag salesperson who was from Venezuela was ineffective due, in part, to his thick accent. *Id.* This Regional Sales Manager allegedly told Keeler that he preferred salespeople who were "born and raised in the United States." *Id.* Allegedly, at a meeting during which Keeler's employment was terminated in May 2014, the manager informed Keeler that his background and experience "did not align with" the "current vision for the region." *Id.*

Keeler contends that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC-CRD") and was issued a right-to-sue letter.[1]  *Id.*  Keeler filed this complaint on September 24, 2015.  *Id.*  Keeler asserts claims under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, for race and national origin discrimination; (2) the Civil Rights Act of 1866, 42 U.S.C. § 1981, for race discrimination; and (3) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, 634, for age discrimination.[2]

Brenntag timely moved to dismiss the § 1981 claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Keeler's Puerto Rican national origin is not a protected category under § 1981.  Dkt. 6.  Keeler argues that he did not assert a claim for national origin discrimination under § 1981.  Dkt. 8.  Instead, Keeler asserts that Brenntag violated § 1981 by terminating his employment based on his *race*.  *Id.*  Brenntag responds that the factual allegations in the complaint relate to national origin, not race.  Dkt. 9.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true.  *Kaiser Aluminum*

---

[1] The complaint indicates that the charge and right-to-sue letter are attached as exhibit A, but these documents were not attached to the complaint in the court's electronic filing system. *See* Dkt. 1.

[2] The court has not recited the facts relating to Keeler's age discrimination claim because these facts are not relevant to the instant motion.

*& Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964–65 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (citations omitted). And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 1959.

### III. ANALYSIS

Brenntag argues that the facts alleged in Keeler's complaint cannot support a § 1981 claim because they do not relate to Keeler's race and § 1981 applies only to claims for racial discrimination. Dkt. 6. Keeler, relying primarily on the U.S. Supreme Court's interpretation of § 1981 in *Saint Francis College v. Al-Khazraji*, 483 U.S. 1011, 107 S. Ct. 2022 (1987), contends that his supervisor's concern about employees with thick accents who are not born in the United States is evidence of intentional discrimination based on race in violation of § 1981. Dkt. 8. Brenntag argues that race and national origin are distinct under the law and that the alleged discriminatory animus in this case is clearly based on national origin, not race. Dkt. 9.

In *Saint Francis College*, the U.S. Supreme Court considered a discrimination claim brought by a United States citizen who was born in Iraq. The plaintiff was an associate professor and was

3

denied tenure, allegedly because of his Arabian race. 481 U.S. at 606. He filed a complaint alleging discrimination based on national origin, religion, and/or race under Title VII and under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. *Id.* The district court dismissed all of the claims except the §§ 1981 and 1983 claims as time-barred. *Id.* Later, the district court ruled that the § 1981 claim was barred because § 1981 does not cover discrimination based on Arabian ancestry. *Id.* The plaintiff appealed, and the Court of Appeals held that the plaintiff had asserted a claim for race discrimination and that the plaintiff could maintain a § 1981 claim for race discrimination. *Id.* at 607.

When the case reached the U.S. Supreme Court, the Court noted that § 1981 forbids all racial discrimination in private and public contracts. *Id.* at 608. It then considered whether discrimination based on the plaintiff's Arabian ancestry was discrimination based on race. *Id.* After discussing the history of § 1981, the Court concluded that "Congress intended to protect from discrimination identifiable classes of persons who are subject to intentional discrimination solely because of their ancestry or ethnic characteristics" and that "[s]uch discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *Id.* at 613. The Court further explained that "[i]f respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *Id.*

Keeler asserts that the facts alleged in his complaint fall within the Supreme Court's broad definition of race which includes "'identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.'" Dkt. 8 (quoting *St. Francis Coll.*, 481 U.S. at 609). Keeler points out that in a concurring opinion in *Saint Francis*, Justice

4

Brennan stated that "'the line between discrimination based on ancestry or ethnic characteristics, and discrimination based on place or nation of . . . origin is not a bright one.'" *Id.* (quoting *St. Francis Coll.*, 481 U.S. at 614 (Brennan, J., concurring)). Keeler asserts that his accent is a type of ethnic characteristic and, under *Saint Francis*, § 1981 prohibits discrimination based on ethnic characteristics. *Id.*

Keeler cites *Alvarado v. Shipley Donut Flour & Supply Co.*, 526 F. Supp. 2d 746, 754 (S.D. Tex. 2007) (Atlas, J.), in support of this argument. In *Alvarado*, the plaintiffs sued their former employer for, among other things, discrimination and retaliation under § 1981. 526 F. Supp. 2d at 753. The court held that the plaintiffs' national origin discrimination claims were "not cognizable" under § 1981. *Id.* The court pointed out, however, that race was broadly defined and that even though the national origin claims failed under § 1981, the allegations were cognizable as a claim of race-based discrimination under § 1981. *Id.* The court found that some of the alleged discriminatory comments made by the employer were specific to the plaintiffs' place of origin, Mexico, but others were not related specifically to their national origin, such as "wetback, mojado, stupid, lazy, jackass, pendejo, taco-eater, vaqueton, cabron, vato." *Id.* at 754–55. The court held that the "basis for the alleged discrimination [thus involved] fact questions that [could not] be resolved at the summary judgment stage." *Id.* at 755.

Here, the complaint indicates that a Brenntag manager made comments about wanting salespeople who were born in the United States and did not have accents. *See* Dkt. 1. Keeler implies that the reason for his not "aligning with the vision" for the company must have been that he was born in Puerto Rico and had an accent. *See* Dkt. 1. It appears that Keeler is concerned that he was

5

fired because he was not born in the continental United States, which relates to the place of his origin, and his accent, which also relates, at least in most situations, to the place of his origin.

The United States District Court for the District of New Jersey considered whether discrimination based on an accent qualified as racial discrimination under § 1981 in *Wesley v. Palace Rehabilitation & Care Center, L.L.C.*, 3 F. Supp. 3d 221 (D.N.J. 2014). The defendant moved for summary judgment on the plaintiff's § 1981 claim, asserting that the plaintiff did not allege a cognizable claim under § 1981 because the facts alleged did not support a claim for racial discrimination. 3 F. Supp. 3d at 233. The plaintiff was born in Liberia and spoke with a thick Liberian accent. *Id.* at 226. She was employed by the defendant as a nurse. *Id.* Most of her patients were of Asian descent. *Id.* According to the plaintiff, when her employment was terminated, she states that her supervisor told her that the employer needed to replace her with an employee of Asian descent, to whom the patients could more easily relate. *Id.* at 227.

The court noted that the concept of "race" embodied in § 1981 is more expansive than the modern understanding of the term suggests and, citing *Saint Francis College*, pointed out that it includes "'race, ancestry, and ethnic characteristics.'" *Id.* at 228 (citing *St. Francis Coll.*, 481 U.S. at 613). The court reasoned that discrimination based on an accent "may constitute national origin discrimination and/or racial discrimination. To determine the nature of the discriminatory animus when a plaintiff's accent is at issue, a court must consider the context of the employment action or comments." *Id.* at 230 (citing *Chandoke v. Anheuser-Busch, Inc.*, 843 F. Supp. 16, 20 n.6 (D.N.J. 1994)). The court went on to explain:

> National origin discrimination may arise in a case where a plaintiff suffered from employees mocking her accent, while also being taunted with phrases that specifically acknowledge a person's

6

>national origin. . . . Under a different set of circumstances, a plaintiff's accent could give rise to racial discrimination. . . . Thus, the context of [the] alleged statements regarding [the] Plaintiff's accent is key to determining the type of discriminatory animus.

*Id.* (citations and footnotes omitted).

The court is *Wesley* relied on another New Jersey District Court case—*Chandoke*, 843 F. Supp. 16. The plaintiff in *Chandoke* was born in India and contended that the defendant rejected his job application based on his race and national origin. 843 F. Supp. at 17. An employee of the defendant had spoken with the plaintiff on the phone, and the plaintiff contended that his race was apparent during the conversation because the plaintiff had a thick Indian accent. *Id.* at 19. The defendant argued that the accent supported only a claim of national origin discrimination, not race discrimination. *Id.* The court noted that in some situations, discrimination based on accent relates solely to place of birth, particularly if it is accompanied with taunts such as "stupid foreigner" and "go back where you came from." *Id.* at 20. However, the court also noted, citing Justice Brennan's concurrence in *Saint Francis College*, that often one's ancestry and one's national origin are identical as a factual matter, as often a nation where a person is born is comprised mostly of one ethnic group. *Id.* (citing *St. Francis Coll.*, 481 U.S. at 614 (Brennan, J., concurring)). The court determined that if the caller from the potential employer decided based on the plaintiff's accent that he was from India, he or she likely also assumed the plaintiff was Indian. *Id.* The court denied summary judgment because there was an issue of material fact as to whether the employer knew the plaintiff was from India and whether any discrimination was based solely on place of birth or on the plaintiff's ethnic background as well. *Id.*

7

Here, the court is considering a motion to dismiss as opposed to a motion for summary judgment, so it merely must determine whether it is plausible that the discrimination alleged in the complaint was not based solely on Keeler's place of birth and instead was based also on his ethnic background. Under this lenient standard, the court finds that it is plausible that the comment about the other sales representative's thick accent was based on racial animus.

### IV. CONCLUSION

Brenntag's motion to dismiss is DENIED. Keeler has plausibly pled a § 1981 claim based on discrimination because of race.

Signed at Houston, Texas on April 11, 2016.

_____
Gray H. Miller
United States District Judge